I am of the opinion that a rehearing should be granted so that consideration may be given to the State's contention that the motion for a bill of particulars filed after arraignment came too late under the provisions of Article 235 of the Code of Criminal Procedure.

134 So.2d 893

Dr. Theodore A. LI ROCCHI and
Sam Culotta

v.

Harry L. KEEN, Jr., Mrs. Nena S. Keen,
and Jack H. Keen. (Three cases
consolidated.)

No. 45585.

Nov. 6, 1961.

Dissenting Opinion Nov. 16, 1961.

Rehearing Denied Dec. 11, 1961.

Sanders, Miller, Downing, Rubin & Kean, Frank L. Maraist, Baton Rouge, for plaintiffs-relators.

Cobb & Brewer, Baton Rouge, for defendants-respondents.

HAMLIN, Justice.

In the exercise of our supervisory control (Art. VII, Sec. 11, La.Const. of 1921, LSA), we granted certiorari to review judgments of the Court of Appeal, First Circuit (127 So.2d 44; 127 So.2d 47), which made absolute rules nisi which it had previously issued and ordered and directed the judge of the trial court to issue preliminary injunctions arresting orders of seizure and sale of certain described real property by means of executory process. The instant matter involves three identical cases con-

solidated in this Court; only one decree will be rendered herein.

On August 4, 1959, Harry L. Keen, Jr., Jack H. Keen and Nena S. Keen executed three promissory notes in the amounts of $22,500, $5,000 and $22,500, payable "to the order of Ourselves" in monthly installments. The notes were signed by the makers and endorsed in blank by the same parties and each note was paraphed "Ne Varietur" to identify it with an act of mortgage of certain described real property. Each mortgage was executed by authentic act and recited: "Mortgagor [Harry L. Keen, Jr., Nena S. Keen, and Jack H. Keen] is justly and truly indebted unto: Holder Or Holders of the within described note, herein represented by Norma R. Abbott, herein called Mortgagee." Each mortgage further recited: "To represent this debt, mortgagor has subscribed their one certain promissory note dated this day to the order of 'Ourselves.' " After a description of the note given, each mortgage still further recited: "The note was paraphed 'Ne Varietur' by me, Notary, for identification herewith, and Mortgagee acknowledges its receipt and accepts this mortgage." The mortgages, identical in form and all dated August 4, 1959, contained a confession of judgment and were signed by Harry L. Keen, Jr., Nena S. Keen, Jack H. Keen, Carolyn D. Keen, wife of Jack H. Keen (Mortgagors),

Holder Or Holders by Norma R. Abbott (Mortgagee), Frank L. Maraist, Notary Public, and two witnesses. The mortgages did not recite that the notes were endorsed in blank by the makers (Mortgagors).

When the makers of the above notes failed to pay the installments due on August 4, 1960, Dr. Theodore A. LiRocchi and Sam Culotta, alleging that they were the holders and owners for value, before maturity, in due course of business, of the notes made and executed by the debtors to the order of "Ourselves" and duly endorsed in blank by the makers, brought three separate actions praying for orders of executory process, and after due and legal demand of payment, issuance of writs of seizure and sale to be directed to the Sheriff of East Baton Rouge Parish, Louisiana, commanding him to sell the property described in the acts of mortgage, supra, after the necessary formalities. Following the issuance of writs of seizure and sale, defendants filed petitions to arrest the seizure and sale of their property and obtained a temporary restraining order and a rule nisi ordering Dr. Theodore A. LiRocchi and Sam Culotta and the Sheriff of East Baton Rouge Parish to show cause why a preliminary injunction should not issue.[1] In each petition it was alleged that Dr. Theodore A. LiRocchi and Sam Culotta were not entitled in any manner whatsoever to proceed by mortgage foreclosure by exec-

1. Petitioners (Mortgagors) were ordered to furnish a $200 bond in each matter.

utory process for one or more of the following reasons:

"(1) No consideration was given by defendants to your petitioners for the execution of the note and mortgage sued and foreclosed upon;

"(2) If any consideration was given for the execution of said note and mortgage sued and foreclosed upon, which is denied, then such a consideration has thereafter failed;

"(3) Neither the note nor its endorsement sued and foreclosed upon is in authentic form;

"(4) These foreclosure proceedings are premature for the reason that the note sued upon has not become due nor has it matured;

"(5) Even if the note sued upon has become due, which is denied, yet petitioners are obligated to pay defendants only that portion of the money originally borrowed from defendants less the credit of $3,000.00, for the difference thereof constitutes usurious interest which is illegal and unlawful to collect in Louisiana and which is contra bonos mores in all states of these United States;

"(6) Defendants have released from said mortgage a portion of the property that they have seized and, therefore, the whole property should be released from seizure;

"(7) Petitioners have a liquidated claim against defendants in the sum of $100,000.00, which liquidated claim more than off-sets and compensates for the amounts, if any due and demanded, in these mortgage foreclosure proceedings."

The minutes of the trial court recite that on trial of the three cases (consolidated for trial) on October 24, 1960, documentary evidence was introduced, and the rules were argued and submitted. The note of evidence in each case recites that offered in evidence was a certified copy of each mortgage involved and each note originally sued upon; a certified copy of each mortgage and each note had also been attached to each of plaintiffs' petitions. For oral reasons assigned, the trial court recalled and vacated the rules, and decreed that the restraining orders theretofore issued be dissolved and that judgment be rendered in favor of Dr. Theodore A. LiRocchi and Sam Culotta and against plaintiffs in rule (Mortgagors), denying the preliminary injunctions prayed for.

The Court of Appeal directed writs of certiorari and alternative writs of prohibition and mandamus to the trial court for review of its judgments. After hearing the matter the Court of Appeal reversed the trial court, finding that:

"The notarial act in the present case contains authentic evidence of the sig-

natures of the makers but it does not contain authentic evidence of the endorsements of the note by the makers. Since the note is made payable to the order of the makers without authentic evidence of said endorsement, executory process was not available to the holders of said note.

"Since the District Judge was not furnished with authentic evidence of the endorsement of these notes, made payable to the order of the makers, the order of seizure and sale authorizing executory process was improvidently issued and the injunction arresting said order of seizure and sale should have been granted."

The following assignment of errors is set forth by petitioners for review in this Court:

"I.

"The decision rendered by the Court of Appeal ignores the rule of law that executory process may issue upon any obligation secured by a mortgage evidenced by an authentic act importing a confession of judgment if the plaintiff has authentic evidence of his ownership of the obligation secured by the mortgage.

"II.

"The import of the decision of the Court of Appeal is that when a note evidencing a debt secured by a mort-

gage is made payable to the order of the maker, the mortgage must contain the sacramental words 'endorsed in blank' to enable the owner of the note to enforce the mortgage *via executiva*, whether or not there is authentic evidence of the right of the owner of the note to enforce the note even in the absence of any indorsement by the maker. Thus, the decision ignores the jurisprudence of this State and the provisions of the Code of Practice of 1870."

■ This matter arose prior to the adoption of the Louisiana Code of Civil Procedure of 1960; therefore, articles of the Louisiana Code of Practice of 1870 will be considered as applicable thereto.

Article 732 of the Louisiana Code of Practice of 1870, as amended, reads in part as follows:

"Executory process can only be resorted to in the following cases:

"1. When the creditor's right arises from an act importing a confession of judgment, and which contains a privilege or mortgage in his favor."

Article 733 of the Louisiana Code of Practice of 1870, as amended, provides:

"An act is said to import a confession of judgment in matters of privilege and mortgage, when it is passed before a notary public, or other officer

fulfilling the same functions, in the presence of two witnesses, and the obligor declares and acknowledges therein the obligation (whether then existing or thereafter to arise) to which the privilege or mortgage relates."

Article 734 of the Louisiana Code of Practice of 1870, as amended, provides in part:

"When the creditor is in possession of such an act, he may proceed against the debtor or his heirs, by causing the property subject to the privilege or mortgage to be seized and sold, on a simple petition, and without a previous citation of the debtor, * * *"

In connection with the above articles of the Louisiana Code of Practice of 1870, as amended, it is pertinent to recite the following from the Louisiana Negotiable Instruments Act (Act 64 of 1904):

"The instrument is payable to bearer:

\* \* \* \* \* \*

"(5) When the only or last indorsement is an indorsement in blank." LSA–R.S. 7:9.

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery." LSA–R.S. 7:30.

"The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words is a sufficient indorsement." LSA–R.S. 7:31.

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer. But for the purposes of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." LSA–R.S. 7:49.

"* * * 'Delivery' means transfer of possession, actual or constructive, from one person to another.

" 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.

" 'Indorsement' means an indorsement completed by delivery. * * *" LSA–R.S. 7:191.

This Court has recognized that "Executory process, under which a creditor is

permitted, without citation or the usual legal delays, to seize the property of the debtor in satisfaction of a claim, is a harsh remedy specifically sanctioned by the Constitution, Section 44 of Article VII, and is permitted in only two instances, the one pertinent to the instant case being where it is supported by an act importing a confession of judgment. Article 732 of the Code of Practice. Consequently, there must be strict compliance with the letter of the law governing this severe remedy. * * * Further, it is well settled by authorities that are legion in our jurisprudence that the writ of seizure and sale may issue only upon the presentation to the judge of the note sued on and the act containing the confession of judgment. * * * And where there is a discrepancy between the note sought to be collected and the note described in the mortgage, this discrepancy is fatal to the action. * * *" Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So. 2d 305, 306, on original hearing; reinstated on rehearing.

 The mortgage is accessory to a principal obligation which it is designed to strengthen, and of which it is to secure the execution. LSA–C.C. Art. 3284. It is essentially necessary to the existence of a mortgage that there shall be a principal debt to serve as a foundation for it. LSA–C.C. Art. 3285. The mortgage only takes place in such instances as are authorized by law. A mortgage is accessory to the principal obligation which it is given to secure. Blappert v. Succession of Welsch, 192 La. 173, 187 So. 281. A mortgage cannot be the foundation of a separate and distinct demand from the obligation which it purports to secure. Trussell v. Land, 19 La.App. 124, 138 So. 910. As a rule the purport of a note must be determined from the contents within its eight corners (Morris v. Cain's Executors, 39 La.Ann. 712, 1 So. 797, 2 So. 418), but contemporaneously executed written agreements on same subject matter may be construed together in seeking to determine what was in the contemplation of the parties thereto. Mills' Succession v. Manasseh, La.App., 147 So. 77.

Defendants concede that plaintiffs are the first holders of the notes under consideration; they also concede that the notes were endorsed in blank; they still further recognize that Norma Abbott, who is mentioned in the body of the acts of mortgage, was plaintiffs' representative. However, in their brief they argue that:

"A promissory note made payable to order of the maker, or to order of 'ourselves,' is not bearer paper unless endorsed in blank by the maker; and if such endorsement is not evidenced in authentic form, no plaintiff can support executory process to enforce the note on proof in pais of the endorsement. L.R.S. 7:9; 7:30; 7:49; 7:191; Miller, Lyon & Co. v. Joseph Cappel

and Dudley A. Curry, supra. [36 La. Ann. 264]" [2]

Dr. LiRocchi and Sam Culotta contend that the acts of mortgage of August 4, 1959 are sufficient to entitle them to the remedy of executory process.

■ The acts of mortgage were authentic acts passed before a notary public and two witnesses and signed by said witnesses; in said acts, defendants acknowledged the obligation of a mortgage; mortgagees, through their agent, acknowledged receipt of the notes and accepted the mortgages; [3] and, defendants recited that they had executed the promissory notes payable to the order of "Ourselves." Under such conditions and circumstances, there was delivery of the endorsed in blank notes to the mortgagees as owners thereof and at that moment plaintiffs became the first and only holders and owners in due course.

■ The case of Barker, To Use of Atchafalaya Bank v. Banks, 15 La. 453, is urged by counsel for plaintiffs relators as being controlling of the issues herein. In brief, he contends that the holding of this Court in that case and the applicability of that decision to the instant matter are illustrated by the headnote (drafted by the official reporter) which reads as follows:

"Where the vendees and endorsers on notes, secured by mortgage, are parties to the act of sale, it is not necessary that it be expressed therein, that they endorsed the notes, to enable the vendor to proceed by the executory process."

The facts in the Barker case, as stated by this Court, are as follows:

"The act of sale shows that the defendants, John G. Banks and Robert C. Cammack, purchased a corner lot of ground in New Orleans, for the sum of ten thousand dollars, payable in six installments, for which they gave their promissory notes; each of them being alternately maker and endorser, together with a mortgage on the property. The act of sale expresses, that these notes are drawn payable to the order of the payee, without stating that he endorsed the same. The vendor (Barker) acknowledges to have received these notes after they had been marked ne varietur by the notary."

This Court upheld the executory proceeding and order of seizure of sale in the Barker case, supra, despite defendants' contention that there was no authentic evidence adduced of the endorsement of the payees of the notes sued on. We stated:

2. Respondents have not urged any of the other contentions set forth in their petitions for injunctive relief.

3. It is conceded that the notes and mortgages were simultaneously executed.

"This case is to be distinguished from that of Dakin et al. vs. Ganahl & Co.; 13 Louisiana Reports, 512; which is relied on; and is the case of transferees of a note and mortgage. The present is, that of the vendor against his vendees, all of whom are parties to the authentic act, on which the order of seizure and sale issued. This document establishes that the vendees were sureties for each other, and that the security was taken in the form of endorsed notes. Admitting that the sureties did not endorse the notes, the principals are not the less liable to their vendor; for the act of sale proves that they delivered the notes to the latter as evidence of the price of the sale.

\* \* \* \* \* \*

"The signature of the plaintiff to the act of sale, is evidence that he accepted it, with the mortgage and all the stipulations contained therein." [4]

We have also examined the case of Dakin et al. v. Ganahl and Co., 13 La. 512, supra, and find that in December, 1836, John Green sold by public auction a square of ground to Dakin & Dakin for $8,000, payable by installments of $2,000 each, for which Dakin & Dakin, the vendees, gave their notes.

The second payment, evidenced by the promissory note of Dakin & Dakin, was dated December 17, 1836, and was payable to the order of Cornelius Hurst one year after date. It was endorsed "C. Hurst." "John Green." "John M. Bach." "J. Calhoun." "Thomas Barrett & Co."

John Green, the vender of the property, transferred the note with his mortgage to Ganahl and Co. and subrogated them to his rights by notarial act.

We do not find the Dakin case apposite to the present matter. In that case, John Green, the original holder, transferred the note to another party, Ganahl and Co., whereas, plaintiffs herein, the original holders and owners of the notes in controversy, made no transfer of the notes—they instituted foreclosure proceedings as the first and only holders and owners in due course.

However, we are of the opinion that the Barker case, supra, is applicable to the instant matter.

In concluding that the district judge had to be furnished with authentic evidence of the endorsement of the notes in question for executory process to issue herein, the Court of Appeal relied on the cases of Miller, Lyon & Co. v. Joseph Cappel and Dudley A. Curry, 36 La.Ann. 264, and

---

4. It is to be observed that even though the Court in the Barker case, supra, concerned itself with a vendor's lien and privilege, Article 732 of the Louisiana Code of Practice states that Executory Process can only be resorted to in cases when the creditor's right arises from an act importing a confession of judgment, and which contains a *privilege* or *mortgage* in his favor.

Brock, State Bank Commissioner v. Messina, La.App., 200 So. 511.

In the case of Miller, Lyon & Co., the Court was concerned with an order of seizure and sale on a mortgage note of $4,000, executed by defendants Cappel and Curry to the order of A. A. Mouton and endorsed in blank by Mouton. Miller, Lyon & Co. acquired the notes as holders in due course. This Court affirmed the contention of Cappel and Curry that there was no authentic evidence furnished of the transfer of the note by Mouton, the payee or endorser, stating:

"The point is well taken and it must prevail. There is authentic evidence of the execution of the note and of the mortgage, but none to show the transfer of the note and of its accessory, the mortgage. In fact the record contains no evidence whatever in proof of the signature of the payee, A. A. Mouton, without which, even in the via ordinaria, the plaintiff could not recover judgment on the note.

"To justify the order of seizure and sale every muniment of title, and every link of evidence must be in the authentic form. In such a proceeding the judge can entertain no matter in pais.

\* \* \* \* \* \*

"The question to be met is not whether the signature in the blank endorsement is that of A. A. Mouton, but whether the judge was furnished with authentic evidence of that fact.

"That principle of our jurisprudence has been uniformly expounded in that sense, in an unbroken line of decisions running as far back as the earliest days of our judicial history."

In the Brock case, supra, an order of seizure and sale issued on a mortgage note of $1,000, executed by defendants Andrew Messina and his wife, payable to the order of the Farmers and Merchants Bank. Suit was brought by J. S. Brock, State Bank Commissioner and, as such, Liquidator of the Tangipahoa Bank & Trust Company in Liquidation. The note bore the following endorsements:

"Farmers and Merchants Bank, by Ivey N. Stafford, Cashier;

"Independence Bank and Trust Co., Ivey Hooper, Cashier, (with two witnesses); and

"Tangipahoa Bank & Trust Company, Independence Branch, P. E. Dollunde, Manager."

This Court, in concluding that the order of seizure and sale which had issued was not supported by the kind of evidence which the law required, stated:

"The only issue on appeal from an order of executory process is the suffi-

ciency of authentic evidence to justify the issuance of the writ. The complaint of the defendants is that no authentic evidence was furnished of the transfers of the note by the Farmers and Merchants Bank, *the original payee or endorser, and by the subsequent payees or endorsers,* and that, therefore, the order was issued without sufficient authentic evidence.

"There is authentic evidence of the execution of the note and of the mortgage *but none to show the transfer of the note and its accessory, the mortgage.*

"Unless the Negotiable Instrument Law (Act 64 of 1904) has changed the requirements, as contended by the plaintiff, that executory process cannot issue on a note, *in the hands of a third person,* payable to the order of a specific named payee, without authentic evidence of the endorsement and transfer of the note and its accessory, the mortgage, it is obvious that the order in this case was signed on insufficient evidence. See Miller v. Cappel, 36 La. Ann. 264." (Emphasis ours.)

We do not find that the above cases are apposite. The facts of neither case are similar to those herein presented; both actions were brought by parties other than the original holders of the notes.

We conclude that since plaintiffs in the instant case are the original and only holders and owners of the notes in controversy, the omission of the words "endorsed in blank" from the acts of mortgage did not deprive them of their right to issuance of orders of executory process and writs of seizure and sale. Under the facts of this case, it was sufficient that the acts of mortgage contained a confession of judgment and a recital of the delivery of the notes to plaintiffs as holders and owners, and their acceptance thereof.

For the reasons assigned, the judgments of the Court of Appeal, First Circuit, in Case No. 5325 of its docket, LiRocchi v. Keen, 127 So. 44, and in Cases Nos. 5326 and 5327 of its docket, LiRocchi v. Keen, 127 So. 47, are reversed and set aside. The judgments of the trial court in the same matters are affirmed. All costs are to be paid by defendants.

McCALEB, J., dissents, being in accord with the views of the Court of Appeal. See 127 So.2d 44.

SUMMERS, Justice (dissenting).

The issue here is whether plaintiffs, who seek to avail themselves of executory process, can establish their ownership of the notes in question by authentic evidence. The notes are described in the mortgage as payable to "ourselves" without any mention that they have been endorsed by the makers.

Nevertheless, the majority opinion predicates its holding on the proposition that plaintiffs are the original and only holders and owners of the notes in controversy, being of the opinion that the omission of authentic evidence of the endorsement of the note did not deprive plaintiffs of their rights to issuance of executory process and writs of seizure and sale, stating that under the facts of this case it was sufficient that the acts of mortgage contained a confession of judgment and a recital of the delivery of the notes to plaintiffs as holders and owners.

It is my opinion that this holding is erroneous for there is no authentic evidence of the delivery of the notes in question to the plaintiffs named here (Dr. LiRocchi and Sam Culotta) as original holders and owners.

The only documents presented to support the issuance of executory process were the mortgages and notes. Nowhere are plaintiffs named therein. Although plaintiffs may be the holders in due course of the notes in question and entitled to enforce their payment by ordinary process, there is no authentic evidence of their status and, inasmuch as their status as owners of the notes requires resort to evidence dehors the authentic acts of mortgage and notes as described therein, they cannot avail themselves of executory process.

I respectfully dissent.